IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | Criminal No. **PJM 94-0441** |
| **DAMON JONES,** * | | |
| Defendant. | * | |

## MEMORANDUM OPINION

Damon Jones is serving a 387-month prison sentence after being convicted of two counts of robbery and two counts of use of a firearm during a crime of violence. He seeks compassionate release, by having his sentence reduced to time-served, currently about 360 months, under 18 U.S.C. § 3582(c)(1)(A)(i). Jones claims there are three extraordinary and compelling circumstances justifying his release: (1) the discontinuation of "stacking" of sentences under 18 U.S.C. § 924(c); (2) the disparity between his sentence and the sentences imposed on other, more serious offenders, namely homicide offenders; and (3) the need to provide end-of-life care for his mother. Jones claims that his release is consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). For the following reasons, Jones' Motion for Compassionate Release is **GRANTED**.

### I. BACKGROUND

This case stems from two armed robberies that occurred between November 1992 and January 1994. ECF No. 85. On November 3, 1992, Jones, along with an accomplice, Malik Nero, entered a Citizen's Bank in Largo, Maryland. *Id.* Jones and Nero entered the bank with a key given to them by another accomplice, Calvin Barnes. *Id.* Jones and Nero restrained a bank employee with plastic tape as Barnes feigned innocence and the trio robbed the bank of approximately $40,000. *Id.* Then, on January 14, 1994, Jones, Nero, and Barnes, along with another co-defendant, Jerry

1

Pearson, participated in the robbery of an armored vehicle in a McDonald's parking lot in Capitol Heights, Maryland. *Id.*; ECF No. 77. Jones acted as the getaway driver, driving the gunman from the scene after the gunman assaulted the armored vehicle driver and stole approximately $5,000. ECF No. 77.

On November 17, 1994, Jones was charged in a five-count indictment with armed bank robbery, in violation of 18 U.S.C. § 2113(d) (Count One), bank robbery by intimidation, in violation of 18 U.S.C. § 2113(a) (Count Two), interference with commerce by robbery, in violation of 18 U.S.C. § 1951 (Count Four) and use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts Three and Five). Indict't. Jones' trial began on February 21, 1996, and on February 27, 1996, he was convicted by the jury of Counts 1 and 3-5. ECF No. 77.

At sentencing, Jones' offense level was established at 27 and his criminal history category at III. *Id.* The Sentencing Guideline range for his robbery convictions was 87-108 months of imprisonment. *Id.* For his convictions of Counts One and Four, Jones received 87-month terms of imprisonment, the lowest available sentence under the guideline range, to run concurrently. *Id.*

At the time, the U.S. Supreme Court interpreted § 924(c) as requiring the imposition of enhanced mandatory minimums for a second or subsequent § 924 conviction even where no prior conviction had become final, meaning that the "second or subsequent" conviction could arise from the same case. *See Deal v. United States*, 508 U.S. 129, 132-33 (1993). This practice is known as "stacking". Accordingly, Jones' two convictions for use of a firearm during a crime of violence rendered him eligible for stacking such that he received a mandatory five-year term of imprisonment on Count Three and a mandatory twenty-year term of imprisonment on Count 5, to be served consecutively to his sentences on all other counts. ECF No. 85. In total, Jones was sentenced to a 387-month term of imprisonment. *Id.*

On May 13, 1996, Jones, through counsel, filed a timely appeal to the Fourth Circuit Court of Appeals, which, on January 1, 1997, affirmed his conviction and sentence. *United States v Jones*, 104 F.3d 360 (4th Cir. 1996).

On December 23, 1997, Jones, acting *pro se*, filed a Motion to Vacate pursuant to 28 U.S.C. § 2255, asking the Court to set aside his sentence due to the alleged ineffective assistance of his trial and appellate counsel. ECF No. 62. On October 29, 1998, the Court denied Jones' Motion to Vacate, ruling that none of the alleged instances of ineffective assistance amounted to a constitutional violation or was outside the realm of reasonable professional judgment. ECF Nos. 63, 64. On December 6, 1999, Jones filed a timely notice of appeal to the Fourth Circuit Court of Appeals, ECF No. 67, which, on March 15, 2000, denied Jones a certificate of appealability and dismissed his appeal. *United States v. Jones*, 211 F.3d 1266 (4th Cir. 2000) (per curiam).

On May 19, 2016, the Court granted Jones, acting *pro se*, leave to file a successive Motion to Vacate pursuant to 28 U.S.C. § 2255, following the U.S. Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591, 606 (2016), which held that the residual clause of the Armed Career Criminal Act was unconstitutionally vague. ECF No. 71. Jones argued that post-*Johnson*, a Hobbs Act robbery no longer categorically qualified as a "crime of violence" under the use of force clause of the Armed Career Criminal Act, and Jones filed his successive Motion to Vacate on May 19, 2016. ECF No. 72. The Court stayed Jones' Motion to Vacate pending rulings by the U.S. Supreme Court in *United States v. Davis*, __ U.S. __, 139 S. Ct. 2319 (2019), and the Fourth Circuit Court of Appeals in *United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019). Following the Fourth Circuit's ruling that a Hobbs Act robbery categorically qualified as a crime of violence, *Mathis*, 932 F.3d at 266, the Court denied Jones' successive Motion to Vacate on April 20, 2022. ECF Nos. 83, 84.

Prior to the denial of Jones' successive Motion to Vacate, Jones, again acting *pro se*, filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), on March 19, 2022. ECF No. 77. The Motion was filed against an important backdrop. Following Jones' conviction and sentencing in 1996, Congress passed, and the President signed, the First Step Act. Pub. L. No. 115-391, 132 Stat, 5194. Among other things, Section 403 of the First Step Act re-wrote § 924(c) to prohibit stacking where a prior § 924(c) conviction had not become final. *See id.*; *see also* 18 U.S.C. § 924(c). Accordingly, it is clear that, were Jones sentenced today, he would have been eligible for no more than two consecutive five-year terms of imprisonment, rather than the twenty-five-year consecutive terms that he received. ECF Nos. 77 at 4 (noting that Jones would face two consecutive 60-month terms of imprisonment today), 85 at 8 (same). In his present Motion, Jones cites, as extraordinary and compelling circumstances justifying his compassionate release, the discontinuation of stacking, the disparity between his sentence and the sentences imposed upon more severe offenders, namely homicide offenders, and the need to provide end-of-life care to his terminally ill mother. ECF No. 77. The government has responded, ECF No. 85, and Jones has replied. ECF No. 91. The Motion is now ripe for determination.

## II.   DISCUSSION

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." *See* 18 U.S.C. § 3582; *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). An exception to this rule is the First Step Act, which amended 18 U.S.C. § 3582 (c)(1)(A) to allow the Court to act on a motion for compassionate release filed by a prisoner. *See United States v. McCoy*, 981 F.3d 271, 274 (4th Cir. 2020). If a petitioner has exhausted his or her administrative remedies, a court "may reduce the term of imprisonment ... after considering the factors set forth in [18 U.S.C.]

4

section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(a).

## A. Exhaustion

An inmate seeking compassionate release must first request that the Bureau of Prisons ("BOP") bring a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). If the BOP fails to act on the request within thirty days, the inmate may directly petition the court for relief. *Id.*; *United States v. Riley*, No. ELH-16-0402, 2020 WL 3034843, at *3 (D. Md. June 4, 2020).

On September 29, 2021, Jones submitted a request for a sentence reduction to the warden of his detention facility. ECF No. 85. After thirty days lapsed, the BOP had not acted on Jones' request. *Id.* On March 19, 2022, Jones, through counsel, filed his instant Motion. ECF No. 77. The Government concedes that Jones has exhausted his administrative requirements. ECF No. 85.

## B. Extraordinary and Compelling Circumstances

The Government does not challenge the merits of Jones' proffered extraordinary and compelling circumstances. *Id.* Indeed, "given the background and particular facts" of Jones' case, it does not contest that he "may demonstrate extraordinary and compelling circumstances."[1] *Id.* The Court nevertheless independently analyzes Jones' claims.

In reviewing a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), "courts 'are empowered ... to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). The Court need not defer to the Sentencing Commission's policy statements

---

[1] The Government acknowledges that *McCoy* is binding, controlling precedent in this Circuit. ECF No. 85. However, it notes that its decision to concede this prong of the 18 U.S.C. § 3582 analysis here is based on the "very particular facts" of this case. *Id.* The Government maintains its disagreement with the holding in *McCoy* for the purposes of preserving the issue in future litigation or appeals. *Id.* As such, the Government argues that its position here should be viewed as specific to the facts of this case. *See McCoy*, 981 F.3d at 286, 288 (stressing the need for district courts conducting an "extraordinary and compelling circumstances" inquiry to conduct an individualized assessment of each petitioner's circumstances).

regarding what constitutes "extraordinary and compelling reasons"; rather, the Court has independent discretion to determine if these criteria have been met. *See United States v. Decator*, 452 F.Supp.3d 320, 324 (D. Md. 2020).

Jones asserts that the discontinuation of stacking under § 924(c), and the consequent disparity between the sentence that he received and the sentence that he would be eligible for today, is an extraordinary and compelling circumstance that justifies a sentence reduction. ECF No. 77. The Court agrees.

A sentencing disparity may constitute an extraordinary and compelling circumstance favoring reducing a sentence and granting compassionate release. *See McCoy*, 981 F.3d at 285-86 ("We think courts may legitimately consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair."); *United States v. Lawson*, No. TDC-02-0215, 2021 WL 2042671, at *2 (D. Md. May 21, 2021) (granting compassionate release where defendant received stacked § 924(c) sentences, resulting in sentence grossly disproportionate to what he would have received post-First Step Act); *United States v. Kratsas*, No. DKC-92-0208, 2021 WL 242501, at *4 (D. Md. Jan. 25, 2021) (granting compassionate release to defendant where sentencing judge lamented his lack of discretion to impose a lesser sentence, even though defendant would have still faced possible life sentence today).

Jones received a 387-month term of imprisonment. He received concurrent 87-month terms of imprisonment for his robbery convictions and a mandatory 25-year term of imprisonment for his firearm convictions. ECF No. 85. Today, without question, Jones would not be eligible for stacking under § 924(c), and therefore could only receive two consecutive sixty-month terms of imprisonment for the firearm convictions. In fact, Jones argues that, were he sentenced today, he

6

would receive a 207-month term of imprisonment, far from the 387-408-month range that he faced. ECF No. 77. The Government agrees with Jones' analysis, concluding that Jones would face only a 207-228-month range were he sentenced today. ECF No. 85.

Furthermore, none of Jones' co-defendants remain in prison. ECF No. 77. Calvin Barnes—the bank employee who gave Jones and Malik Nero the key through which they entered the bank—and Jerry Pearson were released from prison in 2002 and 2003, respectively. *Id.* Malik Nero, who received the most severe sentence after Jones, 322 months, and was released in May 2017. *Id.* Jones has been incarcerated for nineteen years since Barnes was released. *Id.*

The disparity between Jones' sentence and those imposed on his co-defendants is particularly glaring in light of their commission of a string of violent post office robberies during December 1993, robberies in which Jones had no role. Brief of Appellee, *United States v. Malik Nero*, 1995 WL 17056300, at *2-4 (4th Cir. 1995). On December 11, 1993, Nero and Barnes committed an armed post office robbery; six days later, on December 17, Nero and Pearson committed another armed post office robbery, and the same pair committed yet another armed post office robbery a week later, on December 24. *Id.* During one of those robberies, Nero threatened to murder an innocent employee who failed to open a safe quickly enough, and during another, he severely injured an employee when he forced her to ascend a loading dock, injuring her back and resulting in her hospitalization. *Id.* That Nero and Pearson recruited a different getaway driver for their December 17 robbery—not Jones—suggests that Jones' involvement in their crimes, while hardly laudable, was nevertheless only occasional. *Compare United States v. DiBiase*, No.12-cr-834, 2020 WL 5525629, at *3 (S.D.N.Y. Sep. 14, 2020) (finding that defendant who acted as getaway driver was not entitled to leniency, as he was in his fifties and had previously been convicted of several similar offenses), *with United States v. Adeyemi*, 470 F.Supp.3d, 489, 533 (E.D. Pa. 2020)

(finding diminished culpability for getaway driver who was 19-year old college student with no criminal history).

While the disparity between Jones' sentence and those imposed on his co-defendants surely highlights the severity of his own, the discontinuation of stacking remains the strongest argument in his favor. Today, Jones cannot and would not qualify for the enhanced mandatory minimum sentence under § 924(c). *Cf. United States v. Harris*, No. PJM-00-253, 2021 WL 1488427, at *4 (D. Md. May 11, 2022) (denying compassionate release where defendant asserted that the mere rarity of the sentence enhancement that he received meant that he would not receive such a sentence today).

Jones further asserts that the disparity between his 387-month sentence and the sentence imposed on more serious offenders, namely homicide offenders, constitutes another extraordinary and compelling circumstance justifying his compassionate release. ECF No. 77. He cites several cases within this district where homicide offenders, often involved in drug trafficking or in league with criminal organizations, received sentences shorter than his 32-year sentence. *See, e.g., United States v. David Hunter*, No. JKB-16-0363 (321-month term of imprisonment for Defendant who pleaded guilty to shooting and killing victim while distributing drugs).

In *Babb v. United States*, No. ELH-04-0190, 2021 WL 2315459 (D. Md. June 4, 2021), Judge Hollander granted a sentence reduction to a defendant convicted of using a firearm in furtherance of a cocaine distribution conspiracy, noting the disparity between the sentence imposed on the defendant and the sentences imposed on homicide offenders. *Id.* at *13 ("Babb's sentence of life imprisonment plus 60 months appears significantly longer than other federal sentences imposed more recently for drug offenses involving murder) (citing *United States v. Bryant*, No. 95-202-CCB-3, 2020 WL 2085471, at *5, n.8 (D. Md. April 30, 2020) ("According to statistics released

by the United States Sentencing Commission for fiscal year 2018, the national average sentence for murder was 291 months, and the Fourth Circuit average was 327 months.")).

Indeed, the Sentencing Commission statistics cited by the Court in *Babb* demonstrate that Jones has already served a longer sentence than the average murder defendant, both nationwide and within the Fourth Circuit. *Babb*, 2021 WL 2315459, at *13. This remains true under the most recent Sentencing Commission statistics for fiscal year 2021, which calculated the average sentences for murder as 244 months (national) and 298 months (Fourth Circuit). United States Sentencing Commission, *Statistical Information Packet, Fiscal Year 2021, Fourth Circuit*, 11, T.7. True, Jones restrained an innocent bank employee with tape during an armed robbery, undoubtedly a serious offense. ECF No. 85. But Jones did not physically injure any victim, let alone kill one, and his crimes were not committed in the furtherance of a larger conspiracy. *Cf. United States v. King*, No. 3:01-cr-210-MOC, 2021 WL 3112436, at *4 (W.D.N.C. July 22, 2021) (denying compassionate release to defendant serving stacked § 924(c) sentences with minimal criminal history who struck bank employees, threw them to the ground, and forced them to disrobe over the course of eight armed robberies); *United States v. Noel*, No. 3:08cr186-03, 2021 WL 1602402, at *4 (E.D. Va. April 23, 2021) (denying compassionate release to defendant who used firearm to threaten customers at a cocaine distribution location). The disparity between Jones' sentence and the sentences imposed on defendants who have committed more serious offenses constitutes another compelling circumstance justifying his compassionate release.

Jones asserts that there is a third extraordinary and compelling circumstance justifying his release. He claims that he must provide end-of-life care for his terminally ill mother. ECF No. 77. Assuming this is so, and there are no other family members who can provide such care, the need to care for a seriously ill relative may constitute an extraordinary and compelling

9

circumstance favoring release. *See, e.g., United States v. Hernandez*, No. 16-20091-CR, 2022 WL 4343991 at *1 (S.D. Fla. Apr. 3, 2020) (granting compassionate release to defendant whose mother required regular medical treatment and who was suffering from cancer, degenerative ocular disease, and mobility problems).

Both Jones' mother and her physician have submitted letters to the Court in support of his claim that he must care for her. ECF No. 77, Exs. 3, 5. Jones' mother suffers from several serious conditions. ECF No. 77. Ex. 3. However, she is currently in hospice care, and her physician reports that she is relaxed and comfortable. *Id.* Moreover, in her letter to the Court, Jones' mother does not state that she intends to rely on Jones for care, and Jones himself does not explain what care he must provide. *Id.* At the same time, neither Jones' brother nor his uncle, both of whom have submitted letters to the Court in support of Jones' release, have stated that they themselves are unable to care for Jones' mother if necessary. ECF No. 77, Exs. 6, 7. As such, Jones' professed need to care for his mother falls short of being an extraordinary and compelling circumstance favoring his compassionate release. *See United States v. Bucci*, 409 F.Supp.3d 1, 2 (D. Mass. 2019) ("[T]he Sentencing Commission has made clear that courts ought consider [an incapacitated relative] an 'extraordinary and compelling reason' for compassionate release only when the defendant is the 'only available caregiver' for him or her.") (citing U.S.S.G. § 1B1.13 n.1(C)(ii)). But that does not diminish the other reasons favoring his release.

Notwithstanding Jones' failure to present an extraordinary and compelling circumstance as to his professed need to care for his mother, he has presented sufficient extraordinary and compelling circumstances regarding the sentencing disparities, discussed *supra*.

### C. 18 U.S.C. § 3553(a) Factors

Jones has demonstrated extraordinary and compelling circumstances justifying his compassionate release, but it remains for the Court to examine whether his release is consistent with the sentencing factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3553(c)(1)(A); *United States v. Hargrove*, 30 F.4th 189, 195 (4th Cir. 2022). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) "the sentencing guideline ranges;" (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense." 18 U.S.C. § 3553(a).

The Government acknowledges the following factors as favoring Jones' release: his age at the time of the robberies (19 and 21-years old, respectively); his lesser role in the second robbery; the nearly thirty years that have passed since the robberies; his minimal criminal history notwithstanding a single drug conviction in DC Superior Court in 1995 and an earlier, unspecified juvenile offense; and his recent behavior in prison, where he has not accumulated a single infraction since 2018. *Id.*

The Government rests its opposition to Jones' release on the extensive number of disciplinary infractions that he compiled in prison prior to 2018, *i.e.*, over ten documented infractions involving violence, possession of a weapon, or threatening violence. *Id.* Furthermore, several of Jones' infractions are labeled "205", a BOP code denoting an instance involving masturbating in front of staff. *Id.* These violations span much of Jones' time in prison, with the first occurring in July 2006 and the last occurring in October 2017. *Id.* The Government acknowledges that Jones' turnaround since 2018 mitigates some of its concerns; it also points out a note in Jones' disciplinary

record following a "205" incident in 2011, where he reported having a problem with chronic masturbation that he was working to overcome. *Id.* Still, the Government contends that there are too many violations over a substantial period to assuage its concerns that Jones has a self-control problem that may manifest in future criminal behavior. *Id.* The Court considers these reasons.

Jones' underlying crimes were undeniably serious, and innocent people were victimized because of his actions. *Id.* However, his youth at the time of the robberies, as well as the substantial amount of time that has since passed, are also relevant considerations. In the time since he was sentenced, the Supreme Court has recognized that "youth matters in sentencing." *Jones v. Mississippi*, __ U.S. __, 141 S. Ct. 1307, 1314 (2021); *see also Roper v. Simmons*, 543 U.S. 551, 574 (2005) ("The qualities that distinguish juveniles from adults do not disappear when an individual turns 18."). Furthermore, Jones' role in the second robbery was limited to that of getaway driver; Nero's and Pearson's recruitment of another getaway driver for their December 17, 1993, robbery, would suggest that Jones' culpability was lesser than that of his co-defendants. *See* Brief of Appellee, 1995 WL 17056300, at *3.

Another fundamental purpose of sentencing is protection of the public. *See* 18 U.S.C. § 3553(a)(2)(C). Jones' BOP record is concerning. He has accumulated a significant number of infractions involving either sexual misconduct or violent behavior. ECF No. 85. But the Court recognizes and appreciates the overall progress that Jones has made, displaying apparently exemplary behavior since 2018. ECF No. 77. Indeed, when viewed alongside his comments to BOP personnel about a chronic self-control problem, Jones' recent turnaround does seem indicative of his attempting to get his life back on track. ECF No. 85. Jones has also completed nearly two dozen educational courses—which began long before the First Step Act was passed into law—and he appears to have the support of his family and church in transitioning back into

society. *See United States v. Eccleston*, No. PJM 11-0567, 2021 WL 5506754, at *6 (D. Md. Nov. 21, 2021) (granting compassionate release to defendant, noting that he undertook rehabilitation efforts "before the First Step Act incentivized his doing so," as well as his strong support network); *United States v. Sappleton*, No. PJM-01-284, 2021 WL 598232, at *3 (D. Md. Feb. 16, 2021) (same). That Jones has been a model prisoner since 2018 also weighs in his favor. ECF No. 85.

Notwithstanding his BOP disciplinary record, Jones' criminal record prior to the offenses for which he is serving his present sentence is scant, having been convicted of a single drug offense in D.C. Superior Court in 1995. *Cf. United States v. Daley*, 512 F.Supp.3d 99, 100 (D. Mass. December 21, 2020) (denying compassionate release where defendant's conviction for bank robbery was his twenty-fourth conviction as an adult). Although Jones was formally on probation at the time of the robberies—typically a matter of concern—the fact is, he was placed on probation at age 16 for an offense that neither he nor the Government have identified. ECF No. 85. Therefore, it does not factor prominently into the Court's analysis. Indeed, the Government concedes that Jones' criminal history is "mild" in comparison to other federal inmates. *Id.* Finally, the conditions of Jones' supervised release, that are about to follow, seem likely sufficient to allay any lingering concerns regarding his dangerousness. *See United States v. DeFoggi*, No. 8:13CR105, 2022 WL 1785435, at *7 (D. Neb. June 1, 2022) (granting compassionate release to child pornography offender, noting that the terms of his supervised release were "adequate to protect the public from further crimes of the defendant.").

Thus, the penological justifications for Jones' continued incarceration are doubtful. ECF No. 85. Since he has already served a sentence in excess of what Congress has identified as appropriate today—while remaining the only co-defendant still in custody—his sentence has already sent a strong message of general deterrence.

Finally, § 3553(a)(4)(i) instructs the Court to consider the main issue of concern in this case, i.e., the sentencing range established for the class of offenses committed by Jones. Once again, the discontinuation of stacking means that Jones would not and could not receive the same § 924(c) sentence enhancement today. Counting earned good-time credit, Jones has served 90% of a sentence (one that was stacked) that Congress has since discontinued, equivalent to 360 months in prison. ECF No. 77. Were Jones sentenced today at the *top* of the guideline range, he would have been released over *seven* years ago.

The Court concludes that Jones' release is consistent with the factors outlined in § 3553(a). His sentence, therefore, is reduced to time served, so he shall be released from incarceration within ten (10) days and proceed with his five-year period of supervised release, with the additional condition that he be placed on home detention during the first six months of his supervised release. The Court suggests that the probation office allow for any appropriate accommodations to these terms of release necessary to allow Jones to visit his mother.

## CONCLUSION

For the foregoing reasons, Jones' Motion for Compassionate Release is **GRANTED**. A separate order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

August ___, 2022